**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SERGEI  KOVALEV, | : |
|                Plaintiff, | : |
| | : |
|     v. | :      CIVIL ACTION |
| | : |
| CITYLIFE-PA, PC | : |
| and | :      No.: |
| AMPERSAND HEALTH-PA, LLC, | : |
| and | :      JURY TRIAL DEMANDED |
| MPULSE MOBILE, INC., | : |
|                Defendants. | : |

## COMPLAINT IN CIVIL ACTION

### TABLE OF CONTENTS

Page

INTRODUCTION……………………………………………………………………………...2

JURISDICTION AND VENUE………………………………………………………………..3

PARTIES ………………………………………………………………………………………4

FACTUAL ALLEGATIONS……………………………………………………….................4

    DEFENDANTS' BACKGROUND……………………………………………………………4

    RELEVANT EVENTS………………………………………………………………………..8

    Plaintiff's telephone number was registered with the national Do Not Call Registry
    maintained by the Federal Government…………………………………………………….8

    Defendants' unlawful activities……………………………………………………………8

    Unsolicited and unlawful text messages interfered with Plaintiff's
    enjoyment of life and his right to privacy…………………………………………………12

    Defendants CityLife and Ampersand Health were not Plaintiff's
    healthcare providers……………………………………………………………………….13

    Defendants violated the Telephone Consumer Protection Act - 47 U.S.C. § 227…………..16

Plaintiff suffered injuries and losses, and his privacy rights were gravely affected…………18

APPLICABILITY OF PUNITIVE DAMAGES…………………………………………………...19

CAUSES OF ACTION…………………………………………………………………………..20

COUNT I………………………………………………………………………………………...20
VIOLATIONS OF 47 U.S.C. § 227(b)

COUNT II………………………………………………………………………………………..23
VIOLATION OF 47 U.S.C. § 227(c)

COUNT III………………………………………………………………………………………25
INVASION OF PRIVACY - INTRUSION UPON SECLUSION

COUNT IV………………………………………………………………………………………27
NEGLIGENCE (ORDINARY NEGLIGENCE)

COUNT V………………………………………………………………………………………..29
NEGLIGENCE PER SE

COUNT VI………………………………………………………………………………………31
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

PRAYER FOR RELIEF…………………………………………………………………………32

DEMAND FOR JURY TRIAL…………………………………………………………………33

CERTIFICATION………………………………………………………………………………34

## **INTRODUCTION**

1.   This action arises out of Defendants' violation of the federal and state laws through the practice of placing multitudes of unsolicited and unwanted telephone calls sending text messages with promotional advertisements of Defendants' services that Plaintiff Sergei Kovalev was not interested to receive and specifically requested to stop. Defendants' tortious conduct was performed without Plaintiff's consent and such conduct violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and other state laws.

2.     Plaintiff brings this legal action and seeks declaratory, injunctive and equitable relief, statutory, compensatory, and punitive damages, litigation costs and attorneys' fees, and other available remedies against all involved Defendants and alleges as follows.

## JURISDICTION AND VENUE

3.     Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. §§ 1331 (federal question), 1367 (supplemental jurisdiction), and 2202 (injunctive relief).

4.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and (c). Defendant CityLife-PA, PC is a for profit domestic professional corporation incorporated in the State of Pennsylvania. Defendant Ampersand Health-PA, LLC is a for profit company organized under the laws of the State of Delaware and is registered to conduct business in the State of Pennsylvania. Defendant mPulse Mobile, Inc. is a for profit corporation formed in the State of Delaware that established minimum contacts with the State of Pennsylvania by sending unsolicited text messages to residents located in the State of Pennsylvania and in the City of Philadelphia.

5.     At all times alleged in this Complaint, all Defendants were doing business in the State of Pennsylvania, including the Eastern District of Pennsylvania, by operating and managing several health centers in the City of Philadelphia known as CityLife Health clinics, and promoting their business activities by sending unsolicited text messages to Plaintiff and other residents of the City of Philadelphia. Defendants are subject to personal jurisdiction in this District and substantial part of the acts and omissions giving rise to Plaintiff's claims have occurred in the City of Philadelphia.

## PARTIES

6.      Plaintiff Sergei Kovalev is an adult individual, a citizen of the United States and a resident of the City of Philadelphia in the State of Pennsylvania.

7.      Defendant CityLife-PA, PC[1] ("CityLife") is a Pennsylvania domestic corporation organized under the laws of the State of Pennsylvania, with a principal executive office located at 601 Taylor Street, Nashville, TN 37208.

8.      Defendant Ampersand Health-PA, LLC[2] ("Ampersand") is a company formed in the State of Delaware and registered to conduct business in the State of Pennsylvania, with a principal executive office located at 601 Taylor Street, Nashville, TN 37208.

9.      Defendant mPulse Mobile, Inc.[3] ("mPulse") is a for profit corporation formed in the State of Delaware that established minimum contacts with the State of Pennsylvania by sending unsolicited text messages to residents of the State of Pennsylvania and the City of Philadelphia. mPulse Mobile, Inc. maintains a principal executive office located at 16530 Ventura Blvd, Suite 500, Encino, CA 91436.

## FACTUAL ALLEGATIONS

### DEFENDANTS' BACKGROUND

10.     Upon information and belief Defendants CityLife-PA, PC and Ampersand Health-PA, LLC own and operate several medical clinics in the City of Philadelphia, and are using different questionable marketing strategies to promote their businesses and to persuade people to visit their health clinics, so CityLife and Ampersand would be able to collect payments from health insurance providers.

---

[1] https://www.citylifehealth.com/

[2] https://ampersand-health.com/

[3] https://mpulsemobile.com/

11.     There is nothing charitable in Defendants' operations and all Defendants are operating their businesses by using profit creating strategies.

12.     According to the claims made by Ampersand on its website, Ampersand and its management believe that "different populations engage with health care in different ways". Due to such claims, Ampersand created some form of inner-city "theory" that divides the entire population of the city residents into multiple populations. According to Ampersand's theory, it appears that Ampersand is defining different races and ethnicities as "different populations".

13.     On its website, Ampersand defines itself as a so-called "Platform" for "health care solutions" and it appears that Ampersand is trying to assert that they know methods designed to make "different populations" come to CityLife clinics.

14.     As it is depicted on Ampersand's scheme attached below (from https://ampersand-health.com/), Defendants are showing how they would message-up/text-up and "activate" people [appears to be similar to brainwashing into submission], so the people subjected to CityLife and Ampersand's constant harassment will have no choice but to start coming to CityLife clinics (that are pictured on such Ampersand's plan with CityLife clinics' own symbols).



15.     Furthermore, according to claims made by Ampersand, the management of this company believes that people are incapable of being engaged in their own health care decisions and they would need somebody like Ampersand to guide them. Ampersand declares that:

> "You have to encourage … populations to become engaged in their own health. Leveraging our experience working with inner-city … populations, the Ampersand Health Solutions Platform <u>activates</u> members where they live, learn, work & worship…"[4]

16.     According to CityLife and Ampersand's claims, they are "activating" people [like some sort of robots] "where they live, learn, work & worship", all with obvious intention to make people come to CityLife and Ampersand's profit-creating clinics.

17.     In interaction with the reporter for Philadelphia Business Journal around November 2018, Ampersand company's chief medical officer Dr. Bob Frank revealed that Ampersand has "also formed a partnership [with] mPulse for text messaging patients, a preferred method of connecting …"[5]

18.     Upon information and belief, it was Defendant mPulse Mobile, Inc. that partnered with CityLife and/or Ampersand to send numerous unsolicited text messages to residents located in the State of Pennsylvania and in the City of Philadelphia, including Plaintiff.

19.     Defendant mPulse advertises itself in the following manner:

> "mPulse Mobile, the leader in mobile health engagement, drives improved health outcomes and business efficiencies by engaging individuals with meaningful and interactive dialog. mPulse Mobile combines technology, analytics and industry expertise that helps healthcare organizations <u>activate</u> their customers... With over 10 years experience, a <u>hundred million messages sent</u>… mPulse Mobile has the data, the expertise and the technology to drive healthy behavior change." (Emphasis added)[6]

---

[4]  https://ampersand-health.com/

[5] https://www.bizjournals.com/philadelphia/news/2018/11/08/ampersand-health-pivots-to-medicaid-primary-care.html

[6] https://www.crunchbase.com/organization/mpulse-mobile-inc-

20.     Such strange claims about "text messaging" to "activate" people, seemingly are based on CityLife and Ampersand's logics that people are incapable to be engaged in their own health care decisions and need Defendants CityLife, Ampersand and mPulse to "activate" them, all without any permission from the affected victims of Defendants' tortious activities.

21.     CityLife, Ampersand, and mPulse totally ignored all rules of civility and all existing laws while "activating" citizens, including Plaintiff, with a constant form of harassment without any form of permission, by making endlessly not permitted and unsolicited non-emergency promotional telemarketing telephone calls creating and sending automatic text messages that are promoting CityLife clinics and sale of their services.

22.     CityLife, Ampersand, and mPulse were sending such text messages to the people, including Plaintiff, with whom these Defendants never had any established relationships. Specifically, Plaintiff never gave any consent to any Defendant for constant harassment by CityLife, Ampersand, and their messaging partner mPulse Mobile.

23.     Defendants were sending multitudes of text messages to a total strangers, most likely listed on some purchased or obtained by other methods 'cold calling lists' containing names and telephone numbers, including Plaintiff's telephone number; but Plaintiff never had any form of relationship with CityLife, Ampersand, or mPulse Mobile and he never gave a permission for these Defendants to make any telephone calls or to send any text messages to him.

24.     What Defendants were totally ignoring, is the fact that adult people of the State of Pennsylvania, including Plaintiff, have no need for any form of "activation" by harassment used by CityLife-PA, PC, Ampersand Health-PA, LLC, and their partner mPulse Mobile, Inc.

## RELEVANT EVENTS

**Plaintiff's telephone number was registered with the national Do Not Call Registry maintained by the Federal Government.**

25.    Plaintiff's telephone number ending in 9562 is registered with the national Do Not

Call Registry since April 4, 2019:

> Verify@donotcall.gov
> Thank you for registering your phone number with the National Do Not Call Registry.
> You successfully registered your phone number ending in 9562 on April 04, 2019.
> Most telemarketers will be required to stop calling you 31 days from your registration
> date. Visit https://www.donotcall.gov  to register another number or file a complaint
> against someone violating the Registry.

26.    Even after Plaintiff's phone number was registered since April 4, 2019 with the

national Do Not Call Registry, Defendants placed at least thirty two (32) unwanted marketing

text messages through the telephone calls placed to Plaintiff's telephone number ending in 9562.

27.    Most likely, Defendants placed a much larger number of telephone calls/text messages

to Plaintiff's number, because in efforts to maintain usable space on his electronic devices, he

usually deletes unwanted messages and text messages.

28.    Defendants have no possibility to claim any mistakes because Plaintiff is the sole user

of the telephone number ending in 9562 that he had and used for approximately 10-15 years.

## Defendants' unlawful activities.

29.    Defendants' unsolicited and harassing activities started at least on November 22, 2019

(or even before) when Defendants began sending marketing text messages to Plaintiff's

telephone number ending in 9562, without Plaintiff's prior express consent; and continued

regularly through the August 11, 2021.

30.    All such unsolicited marketing text messages were promoting and advertising

CityLife's clinics and services provided by such clinics. Many text messages had incorporated

links directing to promotional videos.

31.    Below is a depiction of several text messages that Defendants sent to Plaintiff (out of total 32 saved text messages). All thirty-two (32) text messages were telemarketing/commercial advertisements of CityLife clinics and their services, and all were pressing Plaintiff to come to Defendants' places.









32.     For the first (at least) 5 first calls, Defendants were using SMS short code 39410. A short code is a 5 or 6 digit phone number that is commonly used among businesses to reach customers (or victims of their harassment). SMS short codes are capable of sending extremely high volumes of text messages in a short period of time and this makes them the optimal choice for telemarketers looking to reach large audiences in short period of time.[7]

33.     Upon information and belief, SMS Short Code 39410 was registered for Defendant mPulse.

34.     Later, starting approximately from March 25, 2020 and all the way to August 11, 2021, the same Defendants started to use a telephone number (267) 490-3764 to send their multiple unsolicited text messages.

---

[7] https://www.zipwhip.com/blog/short-codes-vs-real-phone-numbers-everything-you-need-to-know/

35.     The impersonal and generic nature of Defendant's text messages, coupled with the fact that they originated from short-codes and later from designated number, demonstrates that Defendants utilized an automatic telephone dialing system, i.e., an ATDS, in transmitting its messages.

36.     To send the text message, Defendants used a messaging platform (the "Platform") that potentially can permit Defendants to transmit multitudes of automated text messages not only to Plaintiff but to thousands other people. The Platform is capable of transmitting thousands of text messages in minutes.

37.     The Platform also has the capacity to store telephone numbers, to generate numbers, to dial numbers in order, to dial numbers from a list of numbers, to schedule the time and date for future transmission of text messages, and to perform many other automatic activities.

38.     After receiving unwelcomed, abusive, and extremely intrusive text messages from Defendants, distressed and frustrated Plaintiff personally called on December 23, 2019 to the telephone number (877) 926-9272 that was identified in one of such intrusive text messages. He reached a live representative (female person), he explained that he has no idea why he is receiving disturbing text messages from CityLife that is calling/sending text messages to him constantly, he explained that he is not interested in any services offered by CityLife clinics, and he clearly instructed to remove his telephone number from any and all calling lists that Defendants most-likely purchased somewhere; and he requested never to call or to text any messages to him again.

39.     Plaintiff's instructions that he provided to Defendants on December 23, 2019, to stop any and all calls/text messages promoting and advertising CityLife clinics, never deterred Defendants from their abusive activities and they started the same harassment six days later, by sending another promotional text message on December 30, 2019 and continued their harassment

constantly and regularly until August 11, 2021, by making at least 32 unwanted and unsolicited text messages to Plaintiff's telephone number.

40.     At no point of time did Plaintiff provide Defendants CityLife, Ampersand, and mPulse with Plaintiff's express written consent to be contacted by text messages using an ATDS.

41.     Plaintiff never gave to Defendants CityLife, Ampersand, and mPulse any consent at all to call or text him any unsolicited messages, or to interact with Plaintiff in any form or in any manner. Plaintiff does not know how Defendants obtained his number.

42.     Plaintiff never had any business or any other form of relationship with any Defendant, never knew these Defendants and never allowed them to call or to text any messages to him.

43.     Plaintiff is not, and has never been, Defendants' customer and Plaintiff has no any possible association with any Defendant. Only after receiving unwanted text messages, Plaintiff made an Internet search to find out information about CityLife clinics.

44.     At no point of time Defendants CityLife, Ampersand, and mPulse's text messages were made for emergency matters.

45.     All Defendants' unwanted, annoying, disturbing, and unsolicited text messages were adversely affecting Plaintiff's privacy rights, were of commercial nature, were made for commercial purpose, were transmitting unsolicited advertisements describing features and services provided by CityLife clinics and how Plaintiff can visit these clinics; many text messages also were including direct links to CityLife's promotional commercial videos; all in violation of 47 U.S.C. § 227(b)(2)(B).

**Unsolicited and unlawful text messages interfered with Plaintiff's enjoyment of life and his right to privacy.**

46.     Plaintiff's residential telephone line is represented by a hybrid version of telephone system, where all phone calls are ringing and can be answered by Plaintiff through the use of the

operating computer system. All records for telephone calls are routed to his electronic mail as messages, text messages, or as received calls. Incoming calls also can be routed/transferred to any other cellular telephone number. Due to the described hybrid system, Plaintiff's telephone line can be described as a residential telephone line combined with features of cellular telephone line capable of accepting text messages. If not routed/directed to any desired cellular telephone, all text messages that are sent to Plaintiff's telephone number are displayed/flashed on this computer monitor for a certain period of time by placing it above any computer screen that Plaintiff is using and after that, such text messages are moved to his electronic mail acting as a computer-managed records storage device.

47.    When a text message appears on Plaintiff's computer screen, it covers a part of the screen, sits there for some period of time and later automatically moves to electronic mail for storage. At the time when any text message covers the usable space of the computer screen, Plaintiff has no option but to read such message until the text message moves out for storage.

48.    Even after such text messages would move to the electronic mail for storage, Plaintiff is still subjected to the same text messages because text messages will be showing as incoming messages in the electronic mail database. Plaintiff would need to spend additional time when he is checking his emails and messages, to manually open each text message again to verify if he read it. Furthermore, due to limitation of electronic mail usable space, Plaintiff must spend his personal time to perform time-consuming manual maintenance of the email storage capacity by examining and removing/deleting any unwanted messages, including unsolicited text messages.

**Defendants CityLife and Ampersand Health were not Plaintiff's healthcare providers.**

49.    47 CFR § 64.1200(9)(iv) (Delivery restrictions) has a reference to calls made on behalf of healthcare providers, however, it was certainly that the Congress' intention for the

purpose of the TCPA was to define healthcare providers as providers that already established 'patient-provider' relationship with the recipient of text messages.

50.    47 CFR § 64.1200(9)(iv)(C) and (F) provided that health care providers only can have limited interactions with <u>already established patients</u> (obviously only for the purposes of appointment reminders, treating physician's calls, or to inform about tests' results).

51.    47 CFR § 64.1200(9)(iv)(C) indicates that interactions only are allowed with already existing patients (and not some places that are just seeking new patients) and states that:

"(C) Voice calls and text messages are strictly limited [only] to those for the following purposes: appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions.

(F) A healthcare provider may initiate only one message … to each <u>patient</u>…"

52.    At no point of time were Defendants CityLife, Ampersand, and mPulse Mobile healthcare providers for Plaintiff.

53.    At no point of time Plaintiff was a patient of any Defendant CityLife's clinics (neither was he a patient of Ampersand and mPulse Mobile).

54.    At no point of time Defendants CityLife, Ampersand, and mPulse Mobile were acting on behalf of any healthcare provider that had established relationship with Plaintiff, because Defendants were only promoting and advertising CityLife's clinics when Plaintiff never had any knowledge that such places even existed.

55.    At no point of time Plaintiff had any form of relationship with Defendants CityLife, Ampersand, and mPulse Mobile that were advertising and promoting CityLife clinics.

56.    At no point of time Plaintiff ever requested any information or services from Defendants CityLife, Ampersand, and mPulse Mobile that were advertising and promoting CityLife clinics.

57.     At no point of time Plaintiff had any association with any Defendant. Only after receiving unwanted text messages, Plaintiff started an Internet search to find out information about CityLife clinics that were advertised in unwanted text messages.

58.     At no point of time Defendants CityLife, Ampersand, and mPulse's text messages were made for any emergency purposes.

59.     Furthermore, 47 CFR § 64.1200(9)(iv)(D) clearly indicates that, even if Defendants would be acting (hypothetically but it is not applicable to this case) on behalf of healthcare providers that already established relationship with Plaintiff (and not some entities that are just seeking new patients for themselves), such providers with established relationship with Plaintiff only can send limited information without inclusion of any telemarketing, solicitation, or advertising (See 47 CFR § 64.1200(9)(iv)(C): appointment and exam confirmations, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up, prescription notifications):

> "(D) Voice calls and text messages must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules, 45 CFR 160.103"

60.     In this case, all Defendants' text messages were a classic example of telemarketing, solicitation, and advertising. Defendants were advertising and promoting unknown to Plaintiff CityLife clinics that were simply seeking new patients and never acted on behalf of any law-abiding legitimate healthcare providers.

61.     Moreover, 47 CFR § 64.1200(9)(iv)(H) clearly indicates that:

> "(H) A healthcare provider must honor opt-out requests immediately."

62.     Not only Defendants were never healthcare providers for Plaintiff and never acted on behalf of any law-abiding legitimate healthcare providers (with established relationship with Plaintiff), after Plaintiff called Defendants and demanded to take his name out of any calling lists

- 15 -

they are using and requested never call or send him again any additional text messages, these Defendants just ignored Plaintiff's request and continued their harassment for an additional almost 2 years.

**Defendants violated the Telephone Consumer Protection Act - 47 U.S.C. § 227.**

63.    The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls (including text messages) are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

64.    To be able to send any text messages to Plaintiff's telephone number, Defendants must demonstrate that they obtained Plaintiff's prior express consent. See *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent even "for non-telemarketing and non-advertising calls").[8] Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to telephone numbers.

65.    The Telephone Consumer Protection Act - 47 U.S.C. § 227 ("TCPA") provides that it shall be unlawful for any person within the United States to make any call using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call (47 U.S.C. § 227(b)(1)(A)). It also prohibits initiation of any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior

---

[8] https://docs.fcc.gov/public/attachments/FCC-15-72A1_Rcd.pdf

express consent of the called party, unless the call is initiated for emergency purposes (47 U.S.C.

§ 227(b)(1)(B)).

66.    Automated text messages are treated the same way as making telephone calls to any

telephone line without the prior express consent of the called party. See *In the Matter of Rules*

*and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92

(2015):

- Callers cannot avoid obtaining consumer consent for a robocall simply because they are not "currently" or "presently" dialing random or sequential phone numbers;
- Simply being on an acquaintance's phone contact list does not amount to consent to receive robocalls from third-party applications downloaded by the acquaintance;
- Internet-to-phone text messages require consumer consent; and
- Text messages are "calls" subject to the TCPA, as previously determined by the Commission. [9]

67.    Accordingly, Defendants' calls made through text messaging to Plaintiff telephone

line violated 47 U.S.C. § 227(b).

68.    Plaintiff is entitled to bring an action based on a violation of 47 U.S.C. § 227(b) to

enjoin such violation.

69.    Plaintiff is also entitled to bring an action to recover for actual monetary loss from

such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

both such actions. If the court finds that the defendant willfully or knowingly violated 47 U.S.C.

§ 227 the court may increase the amount of the award to an amount equal to 3 times for the sum

of $1500 per each text message.

70.    Furthermore, due to the fact that Plaintiff's telephone number ending in 9562 was (and

still is) registered with the national Do Not Call Registry maintained by the Federal Government,

Defendants also violated 47 U.S.C. § 227(c).

---

[9] https://docs.fcc.gov/public/attachments/FCC-15-72A1_Rcd.pdf

**Plaintiff suffered injuries and losses, and his privacy rights were gravely affected.**

71.     By making thirty-two (32) unwanted telephone calls through unsolicited and disturbing text messaging, Defendants caused Plaintiff actual harm in the form of creating a nuisance, loss of time, stress, disruption of life and other activities, interference with enjoyment of life, invasion of privacy and intrusion upon his seclusion, annoyance, aggravation, emotional distress and mental torment, psychological trauma and mental pain, and many other harms as listed in this Complaint.

72.     Defendants' unsolicited and unwanted text messages interfered with Plaintiff's right for his telephone line to be undisturbed by unwanted communications, and also interfered with Plaintiff's use and enjoyment of his computer and electronic devices.

73.     Defendants' unsolicited and unwanted text messages disrupted Plaintiff's work he usually performs on his computer that was bombarded by Defendants disrupting and unwanted text messages. Defendants' unsolicited and unwanted text messages also created a loss of Plaintiff's productive time.

74.     Defendants' unsolicited and unwanted text messages caused the wear and tear of Plaintiff's electronic hardware and the consumption of electronic/computer memory and resources.

75.     The cumulative effect of unsolicited text messages, such as those complained of by Plaintiff herein, poses a real risk of ultimately rendering electronic devices damaged and unusable as a result of the described wear and tear.

76.     Defendants not only invaded the personal privacy of Plaintiff, inflicted emotional distress to him and caused multiple other harms and injuries, but also intentionally and repeatedly violated the TCPA; and to be specific, Defendants violated the TCPA at least thirty-two (32) times.

- 18 -

77.     Furthermore, any intangible injuries and invasion of privacy are concrete injuries for the purpose of conferring Article III standing. In light of the plain language of the TCPA and Congress's role in elevating injuries to legally cognizable status, sending even a single text message in violation of the TCPA constitutes an injury-in-fact to the recipient so as to provide Article III standing.

78.     Through its very nature, a violation of the TCPA causes the privacy-related harm or intrusion that Congress sought to protect by enacting the TCPA.

79.     There are no violations of 47 U.S.C. § 227 that do not result in the harm that Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invaded Plaintiff's privacy and disturbed his activities, work, quality of life and solitude.

## APPLICABILITY OF PUNITIVE DAMAGES

80.     Punitive damages can be awarded for Defendants' conduct that, as this case demonstrates, was outrageous because of Defendant's wantonness and reckless indifference to the rights of Plaintiff and other citizens that can be affected in similar way.

81.     Plaintiff is entitled to punitive damages to be adjudicated against Defendants because the acts of Defendants were sufficiently egregious to warrant the imposition of punitive damages based on outrageous, tortuous, and misleading activities accompanied with willful, wanton conduct, and reckless behavior in regard to Plaintiff's rights.

82.     The conduct of Defendants was flagrant and grossly deviating from any norms of civilized behavior.

83.     Defendants in this legal matter were displaying willful and wanton, reckless and intentional conduct accompanied with reckless indifference to the rights of Plaintiff. Defendants in this legal matter were clearly acting with gross negligence.

84.     Defendants acted outrageously when they made a conscious decision about a particular course of action and inaction.

85.     Defendants were or should be aware of the harm that may be caused to Plaintiff and to other citizens but Defendants did not try to avoid or prevent the harm. Moreover, Defendants intentionally created such harm. The degree of reprehensibility of Defendants' conduct was sufficiently high.

86.     Plaintiff was harmed by Defendants' acts and has a case for punitive damages. Therefore, punitive damages are justified in this case.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF 47 U.S.C. § 227(b)

87.     Plaintiff restates and incorporates herein by reference all allegations contained in all relevant paragraphs of this Complaint as if fully set forth in their entirety and alleges further.

88.     As provided in this Complaint, Defendants violated 47 U.S.C. § 227(b)(1)(B) that prohibits initiation of any telephone call to any residential telephone line to deliver a message without the prior express consent of the called party.

89.     Furthermore, due to the fact that Plaintiff was using a hybrid telephone system working as a regular residential telephone line with features of the cellular telephone capability to accept text messages and had capability of transferring calls to any cellular telephone line, it can be considered that Defendants also violated § 227(b)(1)(A)(iii) of the TCPA.

90.     Without Plaintiff's prior express consent, Defendants placed at least thirty two (32) unwanted marketing text messages through the telephone calls directed to Plaintiff's telephone number.

91.    All thirty-two (32) described calls were not initiated for emergency purposes, but were made strictly for telemarketing, advertising, and promoting Defendant CityLife's clinics and services that Plaintiff never solicited from any Defendant.

92.    In addition, after receiving unwelcomed, abusive, and extremely intrusive text messages from Defendants, distressed and frustrated Plaintiff personally called on December 23, 2019 to the phone number (877) 926-9272 that was identified in one of such intrusive text messages and specifically instructed Defendants to stop any and all calls/text messages about CityLife.

93.    Nevertheless, even after Plaintiff instructed Defendants to stop texting him, Defendants continued their invasion of privacy and harassment for a lengthy period of time and made a total of 32 unwanted calls/text messages to Plaintiff's telephone number, until August 11, 2021.

94.    Defendants, or third parties directed by Defendants, used equipment having the capacity to store telephone numbers, using a random or sequential generator, to dial such numbers from a list automatically, and to make non-emergency telephone calls to the telephone line of Plaintiff.

95.    These telephone calls containing text messages were sent without regard to whether Defendant had first obtained express consent from the called party to send such text messages. In this case, Defendants did not have any prior express or any consent to text telemarketing messages to the telephone line of Plaintiff, where all such text messages were promoting Defendants' commercial services.

96.    Plaintiff never had any business or any other form of relationship with any Defendant, never knew these Defendants and never allowed them to call or to text any messages to him.

97.    Plaintiff is not, and has never been Defendants' customer and Plaintiff has no any possible association with any Defendant. Only after receiving unwanted text messages, Plaintiff made an Internet search to find information about CityLife clinics.

98.    At no point of time Defendants CityLife, Ampersand, and mPulse's text messages were made for any emergency matters.

99.    All Defendants' unwanted, annoying, disturbing, and unsolicited text messages were adversely affecting Plaintiff's privacy rights, were of commercial nature, were made for commercial purpose, were transmitting unsolicited advertisements describing features and services provided by CityLife clinics and how Plaintiff can visit these clinics; many text messages also were including direct links to CityLife's promotional commercial videos; all in violation of 47 U.S.C. § 227(b)(2)(B).

100.   By making thirty-two (32) unwanted telephone calls through unsolicited disturbing text messaging, Defendants caused Plaintiff actual harm in the form of creating a nuisance, loss of time, stress, disruption of life and other activities, interference with enjoyment of life, invasion of privacy and intrusion upon his seclusion, annoyance, aggravation, emotional distress and mental torment, psychological trauma and mental pain, and many other harms as listed in this Complaint.

101.   As a direct and proximate result of Defendant's misconduct alleged herein and prohibited under 47 U.S.C. § 227(b), Plaintiff suffered actual damages and is entitled to receive up to $1,500 in damages recoverable by Plaintiff pursuant to 47 U.S.C. § 227(b)(3) as treble the amount of statutory damages, for each of the described thirty-two (32) violations performed by Defendants willfully, intentionally, and with full knowledge of their misconduct.

102.   Plaintiff also is entitled to an injunction against any future calls, costs and other damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants, and award the following relief: (a) An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b); (b) An award of statutory damages for violations of 227(b); (c) An award of treble damages; (d) An award of injunctive and other equitable relief as necessary to protect the interests of Plaintiff, including an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; (e) An award of reasonable attorneys' fees and all costs; and (f) An award of any other relief the Court finds just and proper.

## <u>COUNT II</u>

## **VIOLATION OF 47 U.S.C. § 227(c)**

103.   Plaintiff restates and incorporates herein by reference all allegations contained in all relevant paragraphs of this Complaint as if fully set forth in their entirety and alleges further.

104.   The TCPA's implementation regulation, 47 C.F.R. § 64.1200(c), provides that:

"(c) No person or entity shall initiate any telephone solicitation to:

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

105.   Per 47 C.F.R. § 64.1200(e), § 64.1200(c) and (d) also "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

106.   47 C.F.R. § 64.1200(d) further provides that "(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

107.    47 U.S.C. § 227(c)(5) provides that a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were intended to protect privacy rights to avoid receiving telephone solicitations to which they object.

108.    Since April 4, 2019, Plaintiff's phone number ending in 9562 was registered with the national Do Not Call Registry.

109.    Without Plaintiff's prior express consent, Defendants placed at least thirty two (32) unwanted marketing text messages through the telephone calls directed to Plaintiff's telephone number.

110.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff who registered his respective telephone number on the National Do Not Call Registry maintained by the Federal Government, as a person who do not wish to receive telephone solicitations.

111.    Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone call containing more than one text message in a 12-month period by or on behalf of Defendants.

112.    As a direct and proximate result of Defendant's misconduct alleged herein and prohibited under 47 U.S.C. § 227(c), Plaintiff suffered actual damages and is entitled to receive up to $1,500 in damages recoverable by Plaintiff pursuant to 47 U.S.C. § 227(c)(5) as treble the amount of statutory damages, for each of the described thirty-two (32) violations performed by Defendants willfully, intentionally, and with full knowledge of their misconduct.

        WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants, and award the following relief: (a) An order declaring that Defendant's

actions, as set out above, violate 47 U.S.C. § 227(c); (b) An award of statutory damages for violations of 227(c); (c) An award of treble damages; (d) An award of injunctive and other equitable relief as necessary to protect the interests of Plaintiff, including an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; (e) An award of reasonable attorneys' fees and costs; and (f) An award of any other relief the Court finds just and proper.

## COUNT III

## INVASION OF PRIVACY - INTRUSION UPON SECLUSION

113.    Plaintiff restates and incorporates herein by reference all allegations contained in all relevant paragraphs of this Complaint as if fully set forth in their entirety and alleges further.

114.    In this legal matter Defendants intentionally intruded into a private place and private affairs of Plaintiff by sending without his consent to his personal telephone number highly intrusive, unwanted, and prohibited by law thirty-two (32) text messages.

115.    Pennsylvania law recognizes the tort of invasion of privacy as applicable to this case, intrusion upon seclusion.[10]

116.    Pennsylvania courts have adopted section 652B of the Restatement (Second) of Torts which states:

> "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."[11]

117.    Defendants' intrusion and interference with Plaintiff's seclusion was both, substantial and highly offensive to the ordinary reasonable person.

---

[10] *Marks v. Bell Tel. Co. of Pa.,* 331 A.2d 424, 430 (Pa. 1975).

[11] Restatement (Second) of Torts § 652B (1976); *Harris v. Easton Publ'g Co.,* 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984).

118.   For almost two years Defendants that were absolutely unknown to Plaintiff, were constantly harassing and attacking Plaintiff's private space and his seclusion with their attempts to brainwash him into submission by bombarding Plaintiff with promotional telemarketing text messages depicting commercial services available at some unknown to Plaintiff questionable "clinics" that Plaintiff never had any intention to visit.

119.   It was Defendants' illegal and extremely offensive strategy to message-up/text-up and "activate" [like some sort of robots] Plaintiff and all other people similarly affected by Defendants [that were brainwashing Plaintiff into submission] trough constant harassment with unwanted text messages, so Plaintiff would finally give up and start going to Defendants CityLife and Ampersand's clinics.

120.   After Plaintiff called Defendants on December 23, 2019 and instructed to remove his telephone number from any and all calling lists that Defendants most-likely purchased somewhere, Defendants just ignored his request and continued their harassment through invasion of Plaintiff's privacy and his seclusion for additional over 1.5 years.

121.   Plaintiff never gave Defendants CityLife, Ampersand, and mPulse Mobile any consent to be harassed by multiple text messages, for almost two years.

122.   Plaintiff never had any business or any other form of relationship with any Defendant, he was never associated with any Defendant, never knew these Defendants, and never allowed them to call or to text any messages to him.

123.   All Defendants' unwanted, annoying, disturbing, and unsolicited text messages were adversely affecting Plaintiff's privacy rights and his enjoyment of life, were of commercial nature, were made for commercial purpose, were transmitting unsolicited advertisements describing features and services provided by CityLife clinics and how Plaintiff can visit these

clinics; many text messages also were including direct links to CityLife's promotional commercial videos.

124.   By making thirty-two (32) unwanted telephone calls through unsolicited disturbing text messaging, Defendants invaded Plaintiff's right to privacy, intruded upon his seclusion, and caused extreme mental anguish or suffering, stress, anger at having been disturbed, aggravation, emotional distress and mental torment, psychological trauma and mental pain, interference with enjoyment of life, loss of time, disruption of life and other activities, nuisance, and many other harms and injuries as listed in this Complaint.

125.   As a direct, proximate, and legal result of outrageous and unlawful acts performed by Defendants, Plaintiff has suffered from invasion of his right to privacy, harm and damages, and therefore is entitled to recover damages from Defendants, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants, and award the following relief: (a) Awarding Plaintiff all damages incurred as a result of Defendants' conduct, including but not limited to compensatory damages, special damages, compensation for invasion of privacy, compensation for loss of enjoyment of life, psychological trauma, emotional distress and mental anguish; (b) Awarding punitive damages; (c) Awarding attorneys' fees, costs, expenses, and disbursements in this lawsuit; (d) Awarding prejudgment and postjudgment interest to the extent permitted by law; and (e) Awarding such other and further relief as the Court may deem just, proper and equitable.

## COUNT IV
### NEGLIGENCE (ORDINARY NEGLIGENCE)

126.   Plaintiff restates and incorporates herein by reference all allegations contained in all relevant paragraphs of this Complaint as if fully set forth in their entirety and alleges further.

127.   As described in this Complaint, Defendants performed the acts that are classified as negligence.

128.   Defendants owed a legal duty of care to the Plaintiff under the circumstances.

129.   There was an existence of a duty and obligation recognized by the law, requiring the actor to conform to a certain standard of conduct, including but not limited to compliance with all laws and regulations, and compliance with Plaintiff's demand never to call or text him again; and exercise of reasonable care in making telemarketing text messaging, especially when such telemarketing promotional texting was unsolicited and was made without Plaintiff's consent.

130.   Defendants failed to exercise reasonable care when they failed to comply with all existing laws and were making numerous unsolicited and prohibited telemarketing text messaging.

131.   Defendants breached a legal duty to act in a reasonable way.

132.   Defendants failed to uphold the established duty of care for the situation and Defendants failed to act in a reasonable way to avoid reckless behavior that could be reasonably expected to cause injuries to the Plaintiff.

133.   Defendants' breach of required duties and obligations caused the harm and actual losses and damages inflicted to Plaintiff.

134.   Defendants were negligent in at least some of the following ways:

   (a)   Failure to comply with laws and regulations, specifically with laws prohibiting and limiting unauthorized calls and texting;

   (b)   Negligent texting without prior authorization;

   (c)   Failure to comply with demand to stop calling and texting;

   (d)   Failure to exercise reasonable care in sending telemarketing text messages;

   (e)   Failure to obtain Plaintiff's consent for calling and text messaging;

(f)    Otherwise violating state and federal laws and other relevant regulations;

(g)    Otherwise failing to act as reasonably prudent under the circumstances;

(h)    Otherwise being negligent.

135.    As a direct, proximate, and legal result of outrageous acts performed by Defendants in their conduct without due care or common decency, failure to meet the applicable standards of care and in breach of their duty to Plaintiff, Plaintiff has suffered and continues to suffer from harms, damages and injuries, mental anguish, apprehension, severe emotional distress, loss of enjoyment of life, and therefore is entitled to recover damages from Defendants, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants, and award the following relief: (a) Awarding Plaintiff all damages incurred as a result of Defendants' conduct, including but not limited to compensatory damages, special damages, compensation for loss of enjoyment of life, psychological trauma, emotional distress and mental anguish; (b) Awarding punitive damages; (c) Awarding attorneys' fees, costs, expenses, and disbursements in this lawsuit; (d) Awarding prejudgment and postjudgment interest to the extent permitted by law; and (e) Awarding such other and further relief as the Court may deem just, proper and equitable.

## COUNT V

## NEGLIGENCE PER SE

136.    Plaintiff restates and incorporates herein by reference all allegations contained in all relevant paragraphs of this Complaint as if fully set forth in their entirety and alleges further.

137.    Defendants owed a legal duty of care to the Plaintiff under the circumstances.

138.    Defendants breached their legal duty to act in a reasonable way.

139.   Defendants failed to uphold the established duty of care for the situation and Defendants failed to act in a reasonable way to avoid reckless behavior that could be reasonably expected to cause injuries to Plaintiff.

140.   Defendants' actions caused damages and injuries to Plaintiff at the time when statutes and/or regulations were designed to prevent such injuries and damages.

141.   Plaintiff was a member of the class of persons that the statutes or regulations were intended to protect. Defendant's violations of laws and regulations caused the injury to Plaintiff.

142.   The State of Pennsylvania[12] and federal courts are recognizing that a violation of statute or official regulation may serve as a basis for negligence per se claim. A claim based upon negligence per se is not a private cause of action for violation of statute, but rather Defendants' breach of the standard of care, as prescribed by a statute or regulation, conveys an actionable tort duty; and therefore, Defendants should be held liable for negligence per se. The doctrine of per se liability establishes by reference a statutory scheme for the standard of care appropriate to the underlying tort. Here, the statutes and laws that Defendants have violated were establishing the necessary standard of care that was also violated because of statutory violations.

143.   As previously described in this Complaint, Defendants violated at least several applicable statutes, regulations, and/or provisions of law, such as multiple violations of the state and federal laws referenced, including multiple violations of the Telephone Consumer Protection Act - 47 U.S.C. § 227.

144.   Defendants' violations of statutes and/or regulations were the direct and/or proximate cause of Plaintiff's injuries and torts inflicted upon Plaintiff.

145.   As a result of Defendants' conduct, Plaintiff is entitled to recover damages against Defendants, including punitive damages.

---

[12] *Cabiroy v. Scipione,* 767 A.2d 1078, 1082 (Pa. Super. 2001).

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants, and award the following relief: (a) Awarding Plaintiff all damages incurred as a result of Defendants' conduct, including but not limited to compensatory damages, special damages, compensation for loss of enjoyment of life, psychological trauma, emotional distress and mental anguish; (b) Awarding punitive damages; (c) Awarding attorneys' fees, costs, expenses, and disbursements in this lawsuit; (d) Awarding prejudgment and postjudgment interest to the extent permitted by law; and (e) Awarding such other and further relief as the Court may deem just, proper and equitable.

## COUNT VI

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

146.   Plaintiff restates and incorporates herein by reference all allegations contained in all relevant paragraphs of this Complaint as if fully set forth in their entirety and alleges further.

147.   Defendants owed Plaintiff a duty of care to exercise reasonable care in their activities of sending text messages to not consenting people.

148.   Defendants and their representatives knew their conduct was outrageous, reckless, extreme, hurtful, and in total disregard for Plaintiff's feelings, dignity, or fundamental rights as a human being.

149.   Defendants and their representatives were engaged, intentionally and maliciously, for almost two years in the shockingly outrageous, tortuous, fraudulent, misleading, willful and reckless conduct alleged herein.

150.   Plaintiff was in the "zone of danger" of Defendants' tortious conduct.

151.   Plaintiff suffered a physical impact and Plaintiff was in danger and at risk of immediate harm and injury.

152.   Defendants negligently breached their duty of care to Plaintiff, so as it fell well below the applicable standard of care; and directly, proximately, and legally caused harm to Plaintiff by continuous infliction of severe emotional distress to Plaintiff for almost two years, as described herein, specifically by failing to comply with laws and regulations as described.

153.   As a direct, proximate, and legal result of outrageous intentional and negligent acts performed by Defendants, their conduct without due care or common decency, failure to meet the applicable standards of care and in breach of their duty to Plaintiff, Plaintiff has suffered for almost two years and continues to suffer from severe emotional distress, mental anguish, apprehension, loss of enjoyment of life, additional harms and damages, and therefore is entitled to recover damages from Defendants, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants, and award the following relief: (a) Awarding Plaintiff all damages incurred as a result of Defendants' conduct, including but not limited to compensatory damages, special damages, compensation for loss of enjoyment of life, psychological trauma, emotional distress and mental anguish; (b) Awarding punitive damages; (c) Awarding attorneys' fees, costs, expenses, and disbursements in this lawsuit; (d) Awarding prejudgment and postjudgment interest to the extent permitted by law; and (e) Awarding such other and further relief as the Court may deem just, proper and equitable.

## PRAYER FOR RELIEF

Plaintiff Sergei Kovalev requests the following relief:

(a)   Empanelling a jury of Plaintiff's peers (12 jurors);

(b)   Declaring the conduct of Defendants to be in violation of 47 U.S.C. § 227(b) and (c), and in violation of all other applicable laws and regulations;

(c)   Enjoining Defendants from engaging in such prohibited conduct;

(d)   Awarding statutory and treble damages for violation of 47 U.S.C. § 227(b);

(e)   Awarding statutory and treble damages for violation of 47 U.S.C. § 227(c);

(f)   Awarding Plaintiff all damages incurred as a result of Defendants' conduct;

(g)   Awarding punitive damages in the amount of at least One Million Dollars for

Defendants' conduct that no civilized society can tolerate;

(h)   Awarding attorneys' fees, costs, expenses, and disbursements in this lawsuit;

(i)   Awarding prejudgment and postjudgment interest to the extent permitted by

law; and

(j)   Awarding such other and further relief as the Court may deem just, proper and

equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial (12 jurors) on all issues and claims set forth in this

Complaint.

## CERTIFICATION

I declare that the foregoing is true and correct, to the best of my knowledge, information

and belief.

Date: December 20, 2021                          Respectfully submitted,

/s/ *Sergei Kovalev*
Sergei Kovalev, Plaintiff
Philadelphia, PA 19124
215-839-9562

JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SERGEI KOVALEV | CITYLIFE-PA, PC; AMPERSAND HEALTH-PA, LLC; MPULSE MOBILE, INC. |

**(b)** County of Residence of First Listed Plaintiff   Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government
Plaintiff
- [x] 3  Federal Question
*(U.S. Government Not a Party)*
- [ ] 2  U.S. Government
Defendant
- [ ] 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [x] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. § 227(b) and (c)

Brief description of cause:
Violations of Telephone Consumer Protection Act - 47 U.S.C. § 227(b) and (c)

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
$ 1,000,000 (incl. punitive damages)

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| December 20, 2021 | */s/ Sergei Kovalev*, Pro Se |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: <u>Sergei Kovalev,  5305 Oxford Ave, Philadelphia, PA 19124</u>

Address of Defendant: <u>CityLife-PA, PC    Address: 601 Taylor Street, Nashville, TN 37208</u>
<u>Ampersand Health-PA, LLC    Address:  601 Taylor Street, Nashville, TN 37208</u>
<u>mPulse Mobile, Inc.   Address: 16530 Ventura Blvd, Suite 500, Encino, CA 91436</u>

Place of Accident, Incident or Transaction: <u>Philadelphia, PA</u>

---

***RELATED CASE, IF ANY:***

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: <u>December 20, 2021</u>     <u>*/s/ Sergei Kovalev, Pro Se*</u>     _____
                                      *Must sign here*
                        *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

*A.    Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
*(Please specify):* <u>Telephone Consumer Protection Act</u>

*B.    Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, <u>Sergei Kovalev</u>, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: <u>December 20, 2021</u>     <u>*/s/ Sergei Kovalev, Pro Se*</u>     _____
                                      *Sign here if applicable*
                        *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| SERGEI KOVALEV | : | CIVIL ACTION |
| v. | : | |
| CITYLIFE-PA, PC  ET AL. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  **(X)**

| | | |
|---|---|---|
| December 20, 2021 | Pro Se | Sergei Kovalev, Pro Se |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-839-9562 | | s14391@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02